**The below described is SIGNED.**

**Dated: November 28, 2012** _____
*William J. Thurman*
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| **RANDALL R. KRANTZ** and **SUSAN Q. KRANTZ,** | **Bankruptcy No. 10-28557** |
| Debtors. | **Chapter 7** |

### MEMORANDUM DECISION ON DEBTORS'
### MOTION TO AVOID JUDICIAL LIEN

This matter came before the Court on the motion of Randall R. Krantz and Susan Q. Krantz (the "Debtors") to avoid the judicial lien of BRT Funding, LLC ("BRT"). The Court held a hearing on this matter on October 15, 2012, in which Scott Mitchell appeared on behalf of the Debtors and Erik Olson and Jason Hull appeared on behalf of BRT. At the conclusion of the hearing, the Court took this matter under advisement to determine whether BRT's judicial lien should be avoided under § 522(f)(1) of the Bankruptcy Code.[1]

After careful review of the statutory authority, the case law, and the parties' briefs and

_____

[1] Unless otherwise stated, the reference to Sections shall apply to Title 11 of the United States Code.

arguments, the Court issues the following Memorandum Decision.[2]

I.    **JURISDICTION AND VENUE**

This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is appropriate under 28 U.S.C. § 1408. Notice of the hearing on this Motion is found to be appropriate and adequate.

II.   **FACTS AND PROCEDURAL BACKGROUND**

To put the Court's ruling in perspective, it is necessary to begin by laying out this case's somewhat complicated factual and procedural background.

**Mr. Krantz's Acquisition of the Property**

In March of 2008, Mr. Krantz obtained title to a piece of property, located at 2917 East Casto Lane, Salt Lake City (the "Property"), which was subject to a note secured by the Property in favor of America's Wholesale Lender in the amount of $840,000 (the "AWL Loan"). Bank of America, NP ("BoA") was scheduled as the current owner of this debt as of the date of the petition. The original borrowers under the AWL Loan were Richard and Joan Bennion (the "Bennions"). Around the time of his acquisition of the Property, Mr. Krantz obtained a home equity loan on the Property in the amount of $500,000 from Utah First Credit Union ("Utah First").

**BRT's Judgment Lien**

Mr. Krantz and Mr. Bennion were business associates involved with the development of real property through their company Carlsbad. BRT issued a loan to Carlsbad for the purchase of real property in Arizona, and Mr. Krantz and Mr. Bennion were both personal guarantors on the loan.

---

[2]The Memorandum Decision shall constitute the Court's findings and conclusions as allowed by Fed. R. Civ. P. 52, incorporated into this proceeding by Fed. R. Bankr. P. 7052.

After default under that loan, BRT foreclosed, sold the Arizona property, and on August 12, 2009,

obtained a deficiency judgment against Carlsbad, Mr. Krantz, Mr. Bennion, and other guarantors.

In November 2009, BRT took the proper steps to record and perfect its judgment lien in Utah.  At

that time, BRT sent a Notice of Filing of Foreign Judgment to Mr. Krantz.  Accordingly, BRT

successfully had its judgment lien fixed against the Property.

### The Debtors' Bankruptcy Filing, Transfers of the Property, and Original Motion to Avoid Liens

On June 24, 2010, the Debtors filed their petition under chapter 7 of the Bankruptcy Code

(the "Petition Date").  They received their discharge on October 15, 2010.  The Debtors claim that

in early 2011, they were unable to make the mortgage payments on the Property and arranged a "co-

op short sale" with BoA on the Property.  On January 18, 2011, while the Property was still property

of the bankruptcy estate, Mr. Krantz, without seeking leave of this Court, conveyed the Property by

way of Warranty Deed to the Bennions, the original borrowers under the AWL Loan.

On March 16, 2011, the Debtors filed a motion to avoid judicial liens under § 522(f)(1)

("Motion to Avoid #1"), seeking to avoid a number of judicial liens that the Debtors claimed

impaired their homestead exemption on the Property.  The Debtors did not seek to avoid BRT's lien

in Motion to Avoid #1.  The Debtors' counsel claims that this omission was due to his reliance on

an incomplete title report that did not list BRT's lien as one of the judicial liens on the Property.  The

Debtors did not notify the Court that they did not have title to the Property at the time they filed

Motion to Avoid #1.  On April 13, 2011, because no objections to this motion were filed, the Court

granted the motion and entered an order avoiding the various judicial liens laid out in the motion,

which, as noted, did not include BRT's lien.

On March 22, 2011, Richard Bennion, who was in a bankruptcy case of his own before Judge

R. Kimball Mosier in this district, but had the same counsel as the Debtors, filed a motion to avoid

the judgment lien of BRT in Bennion's bankruptcy case on a separate parcel of property. The BRT

judgment lien on Mr. Bennion's property was the same as the judgment lien on the Property. There

were no objections to Mr. Bennion's motion, and it was later granted by that Court.

On June 7, 2011, Ms. Krantz purchased the Property from the Bennions in a short sale via

Warranty Deed. To finance the purchase of the Property, Ms. Krantz obtained two loans from Utah

First in the amounts of $685,000 and $512,000, which apparently paid off the BofA and the prior

Utah First liens.

### Relief from Stay and the *Nunc Pro Tunc* Motion to Avoid

On October 7, 2011, BRT filed a motion for relief from stay as to the Property. No

objections were filed to the motion. On October 13th, the chapter 7 trustee filed a notice of

abandonment as to the Property. The next day, the Debtors filed a motion to avoid BRT's lien under

§ 522(f)(1) *nunc pro tunc* ("Motion to Avoid #2"), requesting the Court avoid BRT's lien as of the

date of the Court's order avoiding the other judgment liens, which would have been April 13, 2011.

On November 23rd, the Court entered an order denying the Debtors' Motion to Avoid #2, finding

*nunc pro tunc* relief was not appropriate under the circumstances. The Court made no determination

as to the substance of the Debtors' § 522(f) argument. On November 30th, finding cause, the Court

entered an order granting BRT's motion for relief from stay as to the Property, as no party opposed

the motion. On December 7th, the Debtors appealed the order denying Motion to Avoid #2 to the

District Court.

### State Court Actions, Another Transfer, and the Current Motion to Avoid

Having obtained relief from stay, BRT subsequently obtained a state court writ of execution

4

authorizing the sale of the Property.  On January 2, 2012, the writ was served upon the Debtors and

Utah First.  A sale of the Property was scheduled for March 6th.  On January 25th, Utah First filed

a lawsuit against BRT in Utah state court seeking priority over BRT's lien.  Although no

representations were made as to the status of the execution sale, the Court assumes that the state

court action has not proceeded or that a preliminary injunction has been obtained in state court to

prevent the execution sale.

 It was around this time, on January 18th, that Ms. Krantz conveyed the Property to Mr. and

Ms. Krantz as joint tenants via warranty deed.  Then, on January 24th, the Debtors filed the Motion

to Avoid BRT's Lien ("Motion to Avoid #3") that is currently before the Court.  On February 22nd,

the Court held a hearing in which it determined it did not have jurisdiction to hear the Debtors'

Motion to Avoid #3 until the District Court had ruled on the appeal from the Court's order denying

the *nunc pro tunc* relief requested in Motion to Avoid #2.

On August 6, 2012, the District Court affirmed this Court's denial of Motion to Avoid #2,

finding that this Court did not abuse its discretion in denying *nunc pro tunc* relief.  However, the

District Court noted that "[t]he parties also seem to agree that the proper course of action is for this

court to remand this action to the Bankruptcy Court for a substance-based determination of the

motion that was filed by the Debtors after filing the Notice of Appeal."  The Debtors then proceeded

to obtain a hearing date for  Motion to Avoid Lien #3, and that is the matter presently before the

Court.

III.   **DISCUSSION**

   **A.  Whether the Motion to Avoid #3 is an Improper Motion to Reconsider Motion to**
   **Avoid #2**

BRT argues that Motion to Avoid #3 is simply a motion to reconsider the final order denying

the Debtors' Motion to Avoid #2.  It argues that Motion to Avoid #3 is based on the same grounds as Motion to Avoid #2, namely lien avoidance under § 522(f)(1) based on impairment of the Debtors' homestead exemption.  It follows, BRT contends, that Motion to Avoid #3 should properly be considered a Fed. R. Civ. P. 60(b)[3] motion.  BRT argues that even though the Debtors raised new legal theories in Motion to Avoid #3, those theories were available when the Debtors filed Motion to Avoid #2.  BRT argues, therefore, that Fed. R. Civ. P. 60(b) relief is not appropriate under the circumstances of this case.

The Court is not persuaded by BRT's reconsideration argument.  First, the Court decided Motion to Avoid #2 solely on the issue of whether *nunc pro tunc* relief was appropriate and never addressed the merits of the Debtors' § 522(f) argument.  Second, the District Court, sitting as an appellate court, specifically stated that it was "remand[ing] this action to the Bankruptcy Court for a substance-based determination of the motion that was filed by the Debtors after filing the Notice of Appeal."  The Court believes that in accordance with such an instruction it is proper to determine the substance of the Debtors' § 522(f) argument at this time.

**B.  Whether the Debtors Have Standing to Avoid the Lien**

Under § 522(f)(1), a debtor may "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . . (A) a judicial lien."  BRT argues that because the Debtors sold the property to the Bennions in January 2011 and repurchased it in June of that year, they are subsequent purchasers for value, and should not be treated as "debtors" for the

---

[3]Fed. R. Civ. P. 60(b) grants a court the authority to "relieve a party or its legal representative from a final judgment, order, or proceeding" under certain circumstances.

purposes of standing to avoid BRT's lien.  By contrast, the Debtors argue that for the purposes of

§ 522(f), impairment is determined as of the Petition Date, and so subsequent transfers are irrelevant

to determining whether a lien should be avoided.  In essence, the Debtors argue the Court should

take a "snap-shot" of the property on the Petition Date and determine whether the lien can be avoided

based on the value of the property and the liens existing on the property at that time.

    The Court agrees with the Debtors that they have standing to avoid BRT's lien.  The United

States Court of Appeals for the Tenth Circuit (the "Tenth Circuit") has not yet ruled on the issue of

whether a lien can be avoided after the property in question has been transferred, so this Court looks

to guidance from caselaw in other circuit courts.  Both the United States Courts of Appeals for the

First and Ninth Circuits (the "First Circuit" and "Ninth Circuit," respectively) have found that a

debtor need not have an interest in the property on the date he or she files a motion to avoid a lien

under § 522(f).  In *In re Chiu*, 304 F.3d 905 (9th Cir. 2002), the Debtors sold property postpetition

and then avoided a judicial lien that had fixed on the property prepetition.  The Ninth Circuit found

that the Debtors could avoid the lien even though they no longer had an interest in the property at

the time they filed their § 522(f) motion.  The Ninth Circuit reasoned:

> The operation of Section 522(f) is not to avoid a "lien", *per se*, although that is its
> practical effect in most cases. Rather, by its terms, Section 522(f) provides for the
> avoidance of the "fixing" of certain liens. To "fix" means to "fasten a liability upon".
> Thus, Section 522(f) operates retrospectively to annul the *event* of fastening the
> subject lien upon a property interest. Accordingly, the fundamental question of
> ownership is whether the property encumbered by the subject lien was "property of
> the debtor" *at the time of the fixing* of that lien upon such property.

*In re Chiu*, 304 F.3d at 908 (quoting *In re Vincent*, 260 B.R. 617, 620-21 (Bankr. D. Conn. 2000)).[4]

---

[4]Other courts in recent years have followed the logic of the *Chiu* case.  *See*, *e.g.*, *In re
Orr*, 304 B.R. 875, 877 (Bankr. S.D. Ill. 2004); *In re Sheckard*, 386 B.R. 118, 129 (Bankr. E.D.
Pa. 2008) *aff'd*, 394 B.R. 56 (E.D. Pa. 2008); *In re Cox*, 349 B.R. 4, 9 (Bankr. E.D. Cal. 2006).

In *In re Wilding*, 475 F.3d 428 (1st Cir. 2007) the First Circuit found that a debtor had standing to

avoid a lien that was satisfied at the time the debtor filed his motion to avoid the lien.  The Court

reasoned:

> It would be an odd result if the statute required the court to measure the value of the property interest as of the petition date, but to measure the value of the lien as of an unrelated point in the future, for example, when the judge actually addresses a motion to avoid. We think the petition date is the operative date for determining the various § 522(f) calculations. In order to determine whether a lien impairs an exemption, the Bankruptcy Court must calculate the value of the lien as of the filing of the petition. If the lien "impairs" the exemption on that date, the court may thereafter address whether the lien should be avoided. Consequently, it is not determinative that the lien did not exist (or, in other words, had zero value) when [the debtor] ultimately filed his motion to avoid.

*In re Wilding*, 475 F.3d at 432.

The Court finds the logic of the *Chiu* and *Wilding* cases persuasive in the present case as

well.[5]  There is no dispute that the lien was fixed on the Property at the time that the Debtors owned

it.  BRT does not dispute that the Debtors would have been able to avoid the lien, subject to

equitable defenses, had the postpetition transfers never occurred.  Because § 522(f) serves to undo

the "fixing" of a lien, the Court looks to the time period the lien fixed, rather than the date of Motion

to Avoid #3, to determine the Debtors' interest in the Property.  The relevant inquiry then becomes

whether the lien impaired the Debtors' homestead exemption on the date of their bankruptcy petition.

As a bankruptcy court looks to the petition date to determine whether a judgment lien impairs a

debtor's homestead exemption, it makes sense that a court would also look to the petition date, rather

than the arbitrary date of the filing of the motion to avoid the lien, to determine a debtor's ability to

---

[5]The Court acknowledges that certain lower courts had, prior to *Chiu* and *Wilding*, reached the opposite conclusion. *See*, *e.g.*, *In re Vitullo*, 60 B.R. 822 (D. N.J. 1986); *In re Montemurro*, 66 B.R. 124 (Bankr. E.D.N.Y. 1984); *In re Riddell*, 96 B.R. 816 (Bankr. S.D. Ohio 1989).  However, the Court does not find the reasoning in these cases persuasive.

avoid the lien. This is also logical from a policy perspective because to rule otherwise would restrict

a debtor and trustee's ability to transfer and dispose of property postpetition.[6]

BRT argued at the hearing on Motion to Avoid #3 that the fact that the Property was

transferred back to the Debtors distinguishes this case from the *Chiu* and *Wilding* line of cases.

However, under the logic of the Court's analysis, the fact that the Property was subsequently

transferred back to the Debtors is immaterial to the inquiry.  The lien was fixed on the Debtors'

property prepetition.   On the Petition Date, the lien either impaired the Debtors' homestead

exemption or it did not. The subsequent transfers of the Property are thus irrelevant to whether the

lien can be avoided under § 522(f).  The Court accordingly finds that the Debtors have standing to

avoid the lien.  Although the initial transfer from the Debtors to the Bennions was not authorized as,

at the time of the transfer, the Property was property of the bankruptcy estate, the Property was

subsequently abandoned by the trustee, and it appears that the transfer had no impact on the estate.

Therefore, this Court sees no basis to deny the current motion for this disregard of chapter 7

bankruptcy procedures.

### C.  Whether the Court Should Abstain from Ruling on the Motion to Avoid #3

BRT takes the position that the Court should abstain from ruling on the Motion to Avoid #3

because of the pending state court litigation between Utah First and BRT as to the priority of each

---

[6]*See In re Sheckard*, 394 B.R. 56, 64-65 (E.D. Pa. 2008) ("[I]t would be inconsistent with the fresh start purpose to require debtors to always file a Motion to Avoid before they sell their property or otherwise risk losing their statutory right to avoid the lien. If an opportunity to sell presents itself quickly, before a debtor can avoid the lien, the statute does not indicate that such unlucky timing should impede the debtors' fresh start. In fact, the statute desired to eliminate the harsh effects of timing on a debtors fresh start by removing the incentives for a race to the courthouse between debtors and creditors.").

party's respective lien.  BRT argues that the Debtors will have their homestead exemption protected

in the state court litigation because either BRT will prevail and the Debtors will receive their

exemption from sale proceeds, or Utah First will prevail and there will be no sale and no impairment

of the Debtors' exemption.

28 U.S.C. § 1334(c)(2) requires abstention if: 1) a timely motion of a party is filed; 2) the

proceeding is based upon a state law claim or state law cause of action; 3) the claim is related to a

case under title 11 but not arising under title 11 or arising in a case under title 11; 4) the proceeding

could not have been commenced in a court of the United States absent jurisdiction under § 1334;

5) the proceeding was commenced in a state forum of appropriate jurisdiction; and 6) the state court

action is capable of timely adjudication in state court.  *In re Midgard Corp.*, 204 B.R. 764 (B.A.P.

10th Cir. 1997).  Additionally, 28 U.S.C. § 1334(c)(1) permits abstention from core matters and non-

core matters when it is in the interest of justice, judicial economy, or respect for state law.  *In re

Telluride Income Growth, L.P.*, 364 B.R. 390 (B.A.P. 10th Cir. 2007).

The Court determines that neither mandatory nor permissive abstention is appropriate in this

case.  The state court litigation was and is a determination of priority based on state law.  The motion

before the Court is brought solely under bankruptcy law, is a determination of whether BRT's lien

should be avoided under provisions of the Bankruptcy Code, and consequently arises under title 11.

The Debtors are either entitled to an avoidance of BRT's lien under § 522(f) or they are not, and a

federal court – either this court under 28 U.S.C. §§ 1334 and 157(b) or the District Court, which has

already determined that this Court is the appropriate forum – is the only forum in which this

determination can be made.  The state court litigation has no impact on that determination, and thus

the Court declines to abstain from determining the issue of whether BRT's judgment lien should be

10

avoided.

**D.   Whether Motion to Avoid #3 is Barred by the Equitable Defenses, including the Doctrine of Laches**

BRT argues that Motion to Avoid #3 should be barred by equitable defenses, in particular the doctrine of laches, because the Debtor failed to bring this motion in a timely matter and BRT was prejudiced by that delay both in terms of money spent pursuing relief from stay and the appeal of Motion to Avoid #2.  The doctrine of laches is applicable when the following two elements are satisfied: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282 (1961).

Section 522(f)(1) does not have a statutory limit.  Nonetheless, BRT claims that the Debtors' delay of 19 months from the petition date to bring Motion to Avoid #3 reveals a lack of diligence on the Debtors' part that prejudiced BRT.  However, "[d]elay, by itself, is not sufficient to support a finding of prejudice 'because a creditor is normally aware that his security interest is subject to avoidance by a . . . debtor.'  Rather, prejudice occurs only when there is a change in position, during the period of delay, which will cause injury to the rights of the creditor or third parties." *In re Quackenbos*, 71 B.R. 693, 695 (Bankr. E.D. Pa. 1987) (quoting *Noble v. Yingling*, 37 B.R. 647, 651 (D. Del. 1984)); *see also*, *Albuquerque Chem. Co., Inc. v. Arneson Products, Inc.*, 201 F.3d 447 (10th Cir. 1999) (holding that a motion to avoid a judgment lien brought after a delay of 11 years was not barred by doctrine of laches).  BRT was listed on the Debtors' initial bankruptcy schedules, so BRT was aware that the Debtors were in bankruptcy.  BRT argued that Debtors' counsel had knowledge of the lien because he filed a motion to avoid the lien on Mr. Bennion's property in March 2011.  At the same time, that fact also cuts against BRT because such an action presumably made BRT aware that its lien could be avoided in the Debtors' bankruptcy as well.  Additionally,

11

BRT took no actions in reliance on the Debtors' inaction until it obtained relief from stay, so it may

not be able to claim that such a delay was prejudicial until that point.

However, the Court recognizes that BRT was prejudiced by the Debtors' delay in bringing

Motion to Avoid #3 after it obtained relief from stay.  BRT obtained unopposed relief from the

automatic stay and expended attorney's fees and costs pursuing a writ of execution and sale in the

state court.  The Court does not believe that prejudice, however, justifies eradicating the Debtors'

rights to avoid BRT's judgment lien.  To do so would give BRT a windfall of a secured claim

representing its $23 million judgment and would almost certainly result in the Debtors' losing their

home.  The Court does not think the level of prejudice BRT suffered, especially when it was aware

of the fact that the Debtors were attempting to avoid its lien, justifies denying the Debtors' entire

ability to avoid BRT's lien.  The Court finds that such a result would be contrary to the purpose of

§ 522(f) to relieve a debtor of a burdensome judgment lien and obtain a "fresh start."

Rather, the Court finds that a more equitable solution would be to require the Debtors to pay

the reasonable fees and costs expended by BRT in pursuing the state court action from at least after

November 30, 2011, the date stay relief was granted, through and during the period that BRT was

prejudiced by the Debtors' delay.[7]  As noted by another court addressing a similar situation:

> The right of a debtor to free himself of liens against property which Congress has
> exempted under section 522(d) should not be vitiated because of some minimal
> additional attorney's fees and costs incurred by a creditor. The equitable solution in
> cases of this type is to condition the debtor's right to file his lien avoidance action on
> his payment to the creditor of any extra costs attributable to that delay.

---

[7]The Court does not rule out the possibility of additional attorneys fees being considered
for other conduct by the Debtors which may have prejudiced BRT unreasonably.  The Court also
leaves for the evidentiary hearing the relevant period in which BRT suffered prejudice
specifically attributable to the Debtors' delay.

*Noble v. Yingling*, 37 B.R. 647, 651 (D. Del. 1984). The Court agrees with the *Noble* Court's

reasoning. Accordingly, the Court determines that the Debtors may still pursue their Motion to

Avoid #3, but only if they provide payment to BRT for reasonable fees incurred in the state court

proceedings from and after November 30, 2011, and such other times as may be justifiable within

the parameters of this decision, until such time as BRT was no longer prejudiced by the Debtor's

delay. BRT provided an affidavit of fees incurred in defending Motion to Avoid #2 and its

subsequent appeal. The Court is not persuaded that those are the appropriate fees to be awarded in

this case. The prejudice suffered by BRT was not on defending all motions in the bankruptcy court,

but rather may be limited to any actions it pursued in the state court after it obtained relief from stay

and while it was still prejudiced by the Debtors' delay. The Court accordingly determines it is

appropriate to hold an evidentiary hearing on the amount of such fees incurred by BRT and what is

reasonable under the circumstances. A hearing on the fees should be coupled with the hearing on

the substantive merits of Motion to Avoid #3. The Court believes that such an outcome resolves not

only the laches defense but all of the equitable defenses raised by BRT in this matter because it

balances the Debtors ability to exercise its rights under the Bankruptcy Code and the prejudice BRT

suffered by the Debtors' lack of diligence.

### E.  Whether the Debtors Have Established Impairment

At this point in the proceedings, the Court has not yet heard enough evidence to establish,

pursuant to § 522(f)(2)(A), whether the sum of the lien, all other liens on the property, and the

amount of the exemption that the Debtors could claim if there were no liens on the property, exceeds

the value that the Debtors' interest in the property would have in the absence of any liens. BRT has

raised a good faith dispute as to what the value of the Property was on the Petition Date, what the

13

value of the other liens were on the Petition Date, and consequently whether BRT's lien impaired the Debtors' homestead exemption. The Court believes it is appropriate to hold an evidentiary hearing on the issues of value and whether BRT's judgment lien impaired the Debtors' homestead exemption.

## IV.     CONCLUSION

Based on the foregoing, the Court determines that Motion to Avoid #3 is not barred by laches, but that as an equitable remedy, the Debtors must pay the reasonable costs and fees incurred by BRT in pursuing the state court litigation while BRT was prejudiced by the Debtors' delay. An evidentiary hearing on the amount of those costs and fees is appropriate. The Court also concludes that as a matter of law, BRT's judicial lien may be avoided under § 522(f)(1) if it impaired the Debtors' homestead exemption. Thus, an evidentiary hearing on that issue is also appropriate and should be heard at the same time as the issue of equitable fees to be awarded. A separate order will accompany this Memorandum Decision.

_____ END OF DOCUMENT _____

oo00–00oo
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below:

Erik A. Olson
Jason R. Hull
DURHAM JONES & PINEGAR
111 E. Broadway, Suite 900
P.O. Box 4050
Salt Lake City, Utah 84110-4050
    *Attorneys for BRT Funding, LLC*

Scott B. Mitchell
2469 East 7000 South, Suite 204
Salt Lake City, Utah 84121
    *Attorney for the Debtors*

Philip G. Jones
853 West Center Street
Orem, UT 84057
    *Chapter 7 Trustee*

U.S. Trustee's Office
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111

15